UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PAMELA BRADLEY**, **MICHELLE
KOMAROMI**, **BRENT HELD**, and
**REBECCA TENNIS**,

       Plaintiffs,

vs.

**VAN BUREN PUBLIC SCHOOL
DISTRICT**, *a municipal corporation*,
**MICHAEL VAN TASSEL, SHONTA
LANGFORD-GREEN, VAN BUREN
PUBLIC SCHOOL DISTRICT BOARD
OF EDUCATION**, *a public body*, **BRENT
MIKULSKI, MARTHA TOTH, KATHY
KOVACH, KEVIN ENGLISH, ALISON
BENNETT**, and **KELLY OWEN**; *all
individuals sued in their individual and
official capacities*; *all Defendants sued
jointly and severally,*

       Defendants.

Case No.:  2016-
Hon.

---

**DEBORAH GORDON LAW**
**Deborah L. Gordon (P27058)**
**Benjamin I. Shipper (P77558)**
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
bshipper@deborahgordonlaw.com

---

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Pamela Bradley, Michelle Komaromi, Brent Held, and Rebecca Tennis (collectively, "Plaintiffs"), by and through their attorneys, Deborah Gordon Law, complain against Defendants Van Buren Public Schools ("VBPSD"), Michael Van Tassel, Shonta Langford-Green, Van Buren Public Schools Board of Education ("VBPSD Board"), Brent Mikulski, Martha Toth, Kathy Kovach, Kevin English, Alison Bennett, and Kelly Owen as follows:

### Parties and Jurisdiction

1.      This is an action for deprivation of Plaintiffs' rights under the United States Constitution arising out of Plaintiffs' employment relationship with Defendants.

2.      This Court has jurisdiction of Plaintiffs' federal constitutional claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

3.      The events of this case as described below occurred in Van Buren Township, Wayne County, Michigan, and as a result venue lies in this District pursuant to 28 U.S.C. § 1391(b).

4.      Plaintiff **Pamela Bradley** is and has been a teacher at VBPSD for the past 18 years, and is a resident of this District.

5.      Plaintiff **Michelle Komaromi** is and has been a teacher at VBPSD for the past 13 years, and is a resident of this District.

6.     Plaintiff **Brent Held** is and has been a teacher at VBPSD for the past 18 years, and is a resident of this District.

7.     Plaintiff **Rebecca Tennis** is and has been a teacher at VBPSD for the past 25 years, and is a resident of this District.

8.     Defendant **Van Buren Public School District** ("VBPSD") is a general powers school district organized under the laws of the State of Michigan and is located within this District.

9.     Defendant **Michael Van Tassel** was, at times relevant, the Superintendent for VBPSD and, upon information and belief, is a resident of this District.

10.     Defendant **Shonta Langford-Green** was, at all times relevant, the Director of Human Resources and the Interim-Superintendent for VBPSD and, upon information and belief, is a resident of this District.

11.     Defendant **Van Buren Public Schools Board of Education** ("VBPSD Board") is a local public body that serves within this District.

12.     Defendant **Brent Mikulski** was, at all times relevant, President of the VBPSD Board and, upon information and belief, is a resident of this District.

13.     Defendant **Martha Toth** was, at all times relevant, Vice-President of the VBPSD Board and, upon information and belief, is a resident of this District.

3

14.     Defendant **Kathy Kovach** was, at all times relevant, Treasurer of the VBPSD Board and, upon information and belief, is a resident of this District.

15.     Defendant **Kevin English** was, at all times relevant, Secretary of the VBPSD Board and, upon information and belief, is a resident of this District.

16.     Defendant **Alison Bennett** was, at all times relevant, Trustee of the VBPSD Board and, upon information and belief, is a resident of this District.

17.     Defendant **Kelly Owen** was, at all times relevant, Trustee of the VBPSD Board and, upon information and belief, is a resident of this District.

18.     Plaintiffs sue Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen in both their individual and official capacities.

19.     At all times material to this Complaint, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen acted under color of law, meaning under color of the statutes, codes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or VBPSD.

20.     As Superintendent for VBPSD, Defendant Van Tassel's acts represent official policy of VBPSD and are attributable to VBPSD.

21.     As Director of Human Resources and Interim-Superintendent for VBPSD, Defendant Langford-Green's acts represent official policy of VBPSD and are attributable to VBPSD.

4

22.    As members of the VBPSD Board, Defendants Mikulski, Toth, Kovach, English, Bennett, and Owen's acts represent official policy of VBPSD and are attributable to VBPSD.

23.    Defendants Mikulski, Toth, Kovach, English, Bennett, and Owen will hereinafter collectively be referred to as "Defendant VBPSD Board Members."

## Background Facts

24.    Plaintiffs are long-time teachers at VBPSD with unblemished records.

25.    Plaintiffs each have tenure with VBPSD.

26.    Plaintiffs each have a property interest in their positions with VBPSD based upon state law, their having tenure, and the VBPSD Employment Handbook.

27.    Plaintiff Pamela Bradley has been employed by VBPSD since 1998.

28.    Plaintiff Michelle Komaromi has been employed by VBPSD since 2003.

29.    Plaintiff Brent Held has been employed by VBPSD since 1998.

30.    Plaintiff Rebecca Tennis has been employed by VBPSD since 1991.

31.    VBPSD has four kindergarten-through-fourth grade elementary schools.

32.    During the time period at issue in this action, all Plaintiffs worked at Savage Road Elementary School ("Savage Elementary").

33.     Savage Elementary is the designated elementary school for the children in the "gifted and talented" program throughout VBPSD.

34.     In or around May 2015, a new State of Michigan standardized test, referred to as the M-STEP, was given to third and fourth graders at VBPSD elementary schools, including Savage Elementary.

35.     Prior to May 2015, each of Plaintiffs had uneventfully administered dozens of standardized tests to Savage Elementary students.

36.     The May 2015 M-STEP was designed to set a benchmark to determine how students would progress on subsequent tests.

37.     Savage Elementary teachers and administrators proctored the M-STEP in various rooms.

38.     Teachers did not proctor the M-STEP for students in their own classrooms. Rather, the students from all classrooms were mixed and divided into separate classrooms.

39.     On or around June 12, 2015, the popular principal of Savage Elementary, Kelly Villa, resigned after 19 years with VBPSD due to harassment by Defendant Superintendent Van Tassel.

40.     Van Tassel became Superintendent in 2012, and ever since has had a history of harassing behavior, which resulted in multiple teacher resignations, and which provoked several lawsuits against VBPSD.

6

41.     In addition, Van Tassel had sent bizarre, anonymous letters to third-parties about VBPSD employees with whom he was unhappy.

42.     In 2014, Savage Elementary, under Principal Villa, had received the highest State of Michigan "Report Card" rating of all schools in VBPSD.

43.     The resignation of Villa as Principal of Savage Elementary caused a great deal of concern on the part of VBPSD parents and the community.

44.     At a standing-room-only meeting of the VBPSD Board on June 22, 2015, the VBPSD Board was questioned by people from the audience about why Villa and other educators had left VBPSD while Van Tassel was Superintendent.

45.     Some parents pressed VBPSD to require exit-interviews for Villa and other teachers that had resigned to obtain details as to why the resignations had occurred, and to require a survey of the remaining VBPSD teachers to gauge their morale.

46.     Van Tassel was clearly the subject of the concerns raised at the VBPSD Board meeting, and concerns and questions about him continued to be raised after the VBPSD Board meeting by the VBPSD parents and community.

47.     Under pressure, Van Tassel began a secret campaign to find ways to discredit Villa and Savage Elementary in the fall of 2015.

48.     In October 2015, the M-STEP test results were made available to VBPSD.

7

49.     Savage Elementary students had performed very well on the M-STEP, and their scores were higher than those of the other elementary schools in VBPSD.

50.     As part of his plan or scheme to discredit Ms. Villa and her school, on a date shortly before December 2, 2015, Superintendent Van Tassel contacted the State of Michigan Department of Education ("MDE") and reported that he believed the M-STEP scores from Savage Elementary were indicative of cheating in some way.

51.     Van Tassel wanted the MDE to take some action which he could then use to his advantage in his campaign against Villa and other teachers that worked at Savage Elementary.

52.     At Van Tassel's instigation and request, on December 2, 2015, the MDE asked Van Tassel to have VBPSD conduct a "self-investigation" of the data Van Tassel had pointed out as unusual.

53.     Van Tassel and the VBPSD Board then retained Collins & Blaha, P.C. ("Collins & Blaha"), outside legal counsel for VBPSD, to investigate "unusual data anomaly patterns on the M-STEP results at Savage [Elementary]."

54.     The investigation was not "independent" as it purported to be; the results were pre-ordained by Van Tassel with the support of the VBPSD Board.

55.     On December 18, 2015, Collins & Blaha's written report (the "Collins & Blaha Report") was provided to Defendants.

8

56.     The Collins & Blaha Report was never released to the public, even up to today's date.

57.     In fact, Defendants publicly took the position in to 2016 that the matter was still being "investigated," although the investigation had already concluded and the Collins & Blaha Report was issued.

58.     The Collins & Blaha Report's conclusion was, in pertinent part, that "some level of 'coaching' did occur by staff members during the testing."

59.     This conclusion was allegedly based on interviews with unnamed third- and fourth-grade Savage Elementary students, who were questioned seven months after the M-STEP was conducted without notification to or permission from their parents or guardians.

60.     These same students had taken multiple practice tests prior to the administration of the M-STEP in May 2015, and multiple other, similar tests since.

61.     This conclusion was also allegedly based on interviews with unnamed teachers and staff from Savage Elementary. No teacher alleged that any of the Plaintiffs had "coached" any student.

62.     In spite of multiple requests, including requests made under Michigan's Freedom of Information Act, Defendants have failed to produce any notes or recordings of any of these interviews. Upon information and belief, no such supporting documents exist.

63.     The Collins & Blaha Report does not name any teachers, let alone Plaintiffs, who allegedly "coached" students, nor does it reference any rule or policy that Plaintiffs violated regarding the alleged "coaching."

64.     Without ever releasing the Collins & Blaha Report, or even admitting that it existed, Van Tassel and all other Defendants intentionally misled the public, stating publicly that Defendants were in engaged in an ongoing investigation into what was being referred to by January 2016 as the "cheating scandal."

65.     As of the date of filing this Complaint, no other investigation report or findings have ever appeared.

66.     Van Tassel and Defendant VBPSD Board Members, without releasing the Collins & Blaha Report, made multiple public statements about "cheating" having occurred and that "it would not be tolerated within our schools."

67.     All of the public statements were designed to place Villa and Savage Elementary in a poor light.

68.     By January 2016, Van Tassel, with the support of the VBPSD Board, had a plan in place to "fire" teachers.

69.     In January 2016, frustrated parents and community members who had received no answers formed a Facebook group called "SavageStrong" in support of removing Van Tassel as Superintendent.

70.    On January 21, 2016, in furtherance of the Van Tassel's plan and scheme, five teachers, including Plaintiffs, were publicly escorted out of the building, while school was still in session, as if they were criminals.

71.    The public display of escorting out the five teachers, including Plaintiffs, was done intentionally to stigmatize the Plaintiffs as teachers who had engaged in significant wrongdoing and who were the "cheaters" who had been previously referenced.

72.    The five teachers, including Plaintiffs, were targeted for suspension and termination because they were known to Van Tassel to be friends with Villa, their former boss.

73.    After this public shaming, Defendants sent Plaintiffs a letter stating that, effective January 21, 2016, Plaintiffs had been placed on "a non-disciplinary paid administrative leave, due to alleged improprieties with M-Step testing."

74.    The letter also states:

Upon conclusion of the investigation, you will be informed of any discipline up to and including filing tenure charges against you recommending termination of your employment.

In the interim, you are directed to not appear on any Board property or hold yourself out as an agent of the District until the conclusion of this investigation, as it will be treated as a trespass. It is expected that you will fully and truthfully cooperate in this investigation. You are also directed not to discuss this investigation with staff, parents, students, other than your Union/legal representatives.

Failure to comply with the directives in this correspondence will be deemed insubordination, subjecting you to discipline, up to and including discharge.

75.     At no point, either before or after being suspended, have Plaintiffs ever been given notice of any violation of any rule giving rise to the basis of the suspension, and Plaintiffs have never been provided a hearing to allow them to refute the allegations.

76.     In fact, there are no allegations, much less any factual findings, that have ever been provided to Plaintiffs or to the public.

77.     As of January 21, 2016, Plaintiffs were prohibited from appearing on VBPSD property. Two of the Plaintiffs have children enrolled in VBPSD and have been unable to freely associate with them, their teachers, administrators, or other parents on VBPSD property.

78.     All Plaintiffs have also been prohibited, under threat of discharge, from attending: public school board meetings, some of which included discussion of circumstances directly and indirectly affecting them; union meetings, of which they are members; teacher training; committee meetings, which they would normally attend; meetings with parents of their students; meetings designed to effectuate the search for a new superintendent; special events involving students in their classes; and multiple other events and doings which would have positively

affected their positions as teachers, members of the community, and parents of students in VBPSD.

79.    The prohibition on the Plaintiffs from stepping on VBPSD property was designed to further stigmatize them and hold them up to opprobrium as part of the plan to discredit them.

80.    No legitimate state interest existed in prohibiting Plaintiffs from appearing on VBPSD property.

81.    There was zero safety interest, and no purpose was ever articulated in any way.

82.    Similarly, there has been no reason to restrain Plaintiffs' speech by prohibiting them from speaking to anyone involved with VBPSD in any way, other than their union.

83.    In February 2016, in furtherance of his plan to discredit and retaliate against Villa, Van Tassel stepped-up his malicious, reckless activities and sent to Villa's new school district employer and its board of education an utterly false and defamatory letter, stating, in part, the following about Villa:

> She helped teachers cheat on last year's M-Step exam while principal at Savage Elementary School in the Van Buren School District. . . . A teacher who is being investigated for cheating told friends at a recent gathering at a local bar, "well yeah, she [Villa] told us 'if they don't know the answer, I'd just give it to them.'" . . .
>
> Parsons principal Kelley Villa is now the defacto head of a group called SavageStrong, which aims to remove the VBPS

13

superintendent for exposing and reporting the cheating scandal to the State of Michigan. Kelley Villa's stated desire is to be reinstated as principal at Savage School and to remove the superintendent who *has done nothing wrong*. Villa has spoken vehemently at VBPS School Board meetings, and has encouraged violence and massive disruption to the daily operations of the school district. Articles about the Van Buren Public Schools cheating scandal can be found online at the Detroit Free Press, and at vanburenschools.com.

[alterations and emphasis in original].

84.   Van Tassel has subsequently engaged in speech, which has stigmatized Plaintiffs, including, but not limited to:

stating to Savage Elementary Staff on January 6, 2016, that "case law says cheating on a test is worse than having sex with students."

stating in a Detroit Free Press interview on January 26, 2016, that "[t]he conclusion of the investigation was that there were improprieties," and that "[t]his has been an unfortunate incident which has serious ramifications not only for students, but the district as well with regard to state required testing that is tied to millions of dollars in state and federal at risk funds."

stating in a Michigan Public Radio interview on January 27, 2016, that "I couldn't believe it. I mean there's one of these potential teachers—several of them—that I've known for quite a while. And trying to understand why it may have happened, or what was going on in people's minds, is especially difficult," and that "[i]t's a horrible situation for everyone involved. . . . "So I have no doubt that children are confused to say the least."

stating on the VBPS website that "[t]he School District's next steps will include any potential discipline of staff and letters written to parents of all students affected by the decision to invalidate their spring 2015 M-STEP scores."

85.     Defendant VBPSD Board Members have subsequently engaged in speech, which has intentionally stigmatized Plaintiffs, including, but not limited to, writing an opinion letter to the Belleville Independent, a local newspaper, that:

> We teach our kids the wrong lessons when we do something wrong ourselves. We teach them an even worse lesson when we don't own up to our mistakes and vow to do better.
>
> Unfortunately, some students in the Van Buren Public Schools are learning such lessons in their own classrooms. . . .
>
> The preliminary findings have unfortunately shown that several teachers in this school appear to have broken the rules by reviewing the students' answers with them and, in some cases, may even have provided them with the correct ones. This finding led to the entire school's testing data being invalidated by the state because, while many of the students earned their scores on their own, it's unknown how many may have received help through no fault of their own.
>
> . . .
>
> As the administration works to finish their investigation and make the necessary changes to ensure that the integrity of testing is preserved in the future, we cannot afford to have an ongoing dialogue at our meetings that questions the value of the truth or suggests that cheating should be tolerated within our schools. . . .
>
> Brent Mikulski, President
> Martha Toth, Vice President
> Kevin English, Secretary
> Kathy Kovach, Treasurer[]
> Kelly Owen, Trustee
> Alison Bennett, Trustee
> Van Buren Public Schools Board of Education

86.   Defendants knew or should have known that Plaintiffs' administration of the M-STEP did not involve any rule violations that should have resulted in any removal or suspension of Plaintiffs from VBPSD.

87.   On February 19, 2016, counsel for Plaintiffs sent a letter requesting a retraction of defamatory statements to Van Tassel and Defendant VBPSD Board Members.

88.   On February 25, 2016, in a search for the truth, counsel for Plaintiffs sent a Freedom of Information Act (FOIA) request to VBPSD requesting, in part, the following information:

    a.    All materials distributed to teachers regarding the administration of the M-STEP in 2015 at Savage Road Elementary School, including, but not limited to, the M-STEP Test Administration Manual and the Assessment Integrity Guide.

    b.    All records of bills for attorneys' fees relating to investigations of Pamela Bradley, Cristen Belloni, Brent Held, Michelle Komaromi, and Rebecca Tennis.

    c.    Any and all documents regarding instructions given to attorneys about how to conduct the investigation of Pamela Bradley, Cristen Belloni, Brent Held, Michelle Komaromi, and Rebecca Tennis.

    d.    Any and all recordings or transcripts of conversations between employees or agents of Van Buren Public Schools and the Michigan Department of Education regarding the results and/or administration of the 2015 M-STEP at Savage Road Elementary School, and particularly such recordings/transcripts between former Superintendent Michael Van Tassel and the Department of Education.

16

  e. Any and all emails between employees or agents of Van Buren Public Schools and the Michigan Department of Education regarding the results and/or administration of the 2015 M-STEP at Savage Road Elementary School, and particularly such emails between former Superintendent Michael Van Tassel.

89. On February 25, 2016, in a search for the truth, counsel for Plaintiffs sent a Freedom of Information Act (FOIA) request to the VBPSD Board requesting, in part, the following information:

  a. Any and all documentation or recordings of communications, including emails and phone conversations, that reflect discussion of the results and/or administration of the 2015 M-STEP at Savage Road Elementary School, between former Superintendent Michael Van Tassel and the Michigan Department of Education.

  b. Minutes from regular and special meetings of the Van Buren Public Schools Board of Education that reflect discussion of the results and/or administration of the 2015 M-STEP at Savage Road Elementary School, including, but not limited to, the following dates: October 12, 2015, October 19, 2015, November 9, 2015, November 16, 2015, December 7, 2015, December 16, 2015, January 11, 2016, February 10, 2016, and February 22, 2016.

  c. Minutes from any closed meetings of the Van Buren Public Schools Board of Education that reflect discussion of the results and/or administration of the 2015 M-STEP at Savage Road Elementary School, including, but not limited to, meetings between October, 2015 and the present date.

90. On February 26, 2016, Collins & Blaha, on behalf of Defendants, responded to the several letters, advising Plaintiffs' counsel to refrain from

"communicating directly with any Board member or employee of the District," but failing to respond to Plaintiffs' February 19, 2016, retraction requests.

91.    Defendants also retained Collins & Blaha to respond to Plaintiffs' counsel's FOIA requests, which sought information underpinning the Collins & Blaha "investigation" and "conclusions."

92.    On February 22, 2016, due to community pressure and Van Tassel's bizarre actions, the VBPSD Board terminated Van Tassel's employment as Superintendent.

93.    However, as part of the ongoing scheme and developing cover-up, the VBPSD Board took the public positon—and continues to take the position—that Van Tassel had suddenly and without notice simply "resigned."

94.    In exchange for this "resignation" without notice, the Board approved a payment to Van Tassel in the amount of approximately $350,000.

95.    On or around February 16, 2016, Defendants created phony teacher tenure charges, marked them "Draft," and presented them to each Plaintiff.

96.    Teacher tenure charges are brought by school districts for the purpose of terminating the teacher's employment relationship permanently.

97.    These charges were designed to intimidate Plaintiffs by including such terms such as "academic fraud" and statements that the "data incontrovertibly proves that cheating occurred."

18

98.     These "charges" were false and baseless, and Defendants knew as such.

99.     After the phony teacher tenure charges were given to Plaintiffs, they were never pursued.

100.    On or around March 23, 2016, Defendants presented Plaintiffs a "Voluntary Settlement Agreement" between Plaintiffs and VBPSD, and between Plaintiffs and the Michigan and National Education Associations (the "MEA" and the "NEA").

101.    Defendants' proposed Voluntary Settlement Agreement—which Plaintiffs were required to sign in order to return to their classrooms—included language agreeing with thirty-seven introductory "WHEREAS" paragraphs essentially stating that all actions taken by VBPSD were true, accurate, and appropriate, including Plaintiffs' removal from VBPSD and their classrooms.

102.    Defendants' proposed Voluntary Settlement Agreement also required that Plaintiffs agree to accept disciplinary counseling, which would be put in their files, indicating wrongdoing on Plaintiffs' parts, and release all possible legal claims, including those regarding Defendants' violations of Plaintiffs' constitutional rights, the right to review their personnel files, violations of Michigan's Open Meetings Act and Freedom of Information Act, and all other remotely possible claims or rights.

19

103.  Defendants' proposed Voluntary Settlement Agreement also required Plaintiffs to release the MEA from any possible claims Plaintiffs had against them.

104.  Defendants' proposed Voluntary Settlement Agreement also required a "joint public statement" would have to be issued by the Plaintiffs and VBPSD.

105.  By the time Defendants proposed the Voluntary Settlement Agreement, Defendant VBPSD Board Members realized that they were in serious difficulty and faced potential legal action for having violated the Plaintiffs' rights.

106.  Defendant VBPSD Board Members' plan and scheme then turned to how Defendants could convince the five teachers, including Plaintiffs, who continued to be involuntarily suspended, to give up their legal rights.

107.  In order to pressure the five teachers, including Plaintiffs, they were advised via the MEA that, in order for them to be able to return to the classroom, all five of them would have to sign the agreement.

108.  The five teachers, including Plaintiffs, refused to sign, and Defendants refused to return Plaintiffs to work.

109.  On March 31, 2016, the five teachers, including Plaintiffs, contacted Defendant Langford-Green (Director of Human Resources and the newly instated Interim-Superintendent for VBPSD) in writing and requested that they be returned to the classroom because they had been not been charged with any wrongdoing.

110.   Neither Langford-Green nor any other representative of Defendants ever responded.

111.   On April 11, 2016, the day of a scheduled VBPSD Board meeting, the five teachers, including Plaintiffs, wrote a letter to every VBPSD Board member requesting that they be allowed to return because that they had not been charged with any wrongdoing, and had not been told what their status was.

112.   No VBPSD Board member, or any other representative of Defendants, substantively responded, and there was no discussion of their communication at the VBPSD Board meeting that night.

113.   On or around April 4, 2016, in an attempt to convince the five teachers, including Plaintiffs, to release their legal rights, the Voluntary Settlement Agreement was changed: the disciplinary counseling was dropped completely, as was the requirement that the five teachers had to sign in unison.

114.   In April 2016, one of the five teachers, and the person with the least seniority, agreed to sign the Voluntary Settlement Agreement, and on April 17, 2016, the VBPSD Board agreed to return that teacher to her classroom on April 18, 2016, with no counseling or discipline of any kind.

115.   The teacher who was returned to work after she signed the Voluntary Settlement had allegedly performed the same "cheating" as the other four teachers, all of whom are Plaintiffs to the instant suit.

116.   As of the date of filing this Complaint, five months have passed since Plaintiffs were removed from their positions and barred from VBPSD property and the ability to speak freely.

117.   In that time no Plaintiff had been provided with any notice of any charge against him/her; no Plaintiff had been notified of any rule violation that is being pursued by VBPSD; no discipline has been issued; and there has been no communication from VBPSD or any of its agents to Plaintiffs about Plaintiffs' status.

118.   Defendants are utterly silent, other than with regard to their insistence that Plaintiffs give up their rights in order to return to work.

119.   If Plaintiffs agree, they will be returned to work with no discipline, the prohibition against stepping on VBPSD property and speaking freely will be removed, and they will be allowed to continue their careers as teachers.

## COUNT I
## 42 U.S.C. § 1983 – Freedom of Speech

120.   Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

121.   Plaintiffs' aforementioned rights to: engage in free exercise of speech on issues of public concern by filing suit in a court of law; attend school board meetings and voice their opinions on matters of public concern on public property; be free from compulsion to speak a particular message; speak to anyone connected

with VBPSD, including parents, that they would like to; and file and pursue requests for information touching on matters of public concern from VBPSD under Michigan's Freedom of Information Act, M.C.L. § 15.231, *et seq.*, without suffering retaliation are constitutionally protected.

122.   At all times material hereto, it was clearly established that violating these rights was constitutionally impermissible.

123.   Acting under color of law, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen promulgated and carried out the official policies, orders and directives described above to deter individuals from engaging in proper protected speech. They did so intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiffs, including the fundamental right to freedom of speech and freedom of association, arising out of the First Amendment of the United States Constitution.

124.   By promulgating and carrying out the policies, orders and directives described above, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen have unlawfully violated Plaintiffs' constitutional rights.

125.   As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earning capacity, loss of job and career opportunities,

additional expenditures of time and money to remain employed, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## COUNT II
### 42 U.S.C. § 1983 – Freedom to Petition

126. Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

127. Plaintiffs' aforementioned right to engage in free exercise of speech on issues of public concern by filing suit in a court of law is constitutionally protected.

128. At all times material hereto, it was clearly established that violating this right was constitutionally impermissible.

129. Acting under color of law, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen promulgated and carried out the official policies, orders and directives described above to deter individuals from engaging in proper protected speech. They did so intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiffs, including the fundamental right to freedom of speech and freedom of association, arising out of the First Amendment of the United States Constitution.

24

130.   By promulgating and carrying out the policies, orders and directives described above, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen have unlawfully violated Plaintiffs' constitutional rights.

131.   As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earning capacity, loss of job and career opportunities, additional expenditures of time and money to remain employed, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## COUNT III
## 42 U.S.C. § 1983 – Freedom of Association

132.   Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

133.   Plaintiffs' aforementioned right to attend school board meetings and voice their opinions on matters of public concern on public property and to speak freely with members of the VBPSD community is constitutionally protected.

134.   At all times material hereto, it was clearly established that violating this right was constitutionally impermissible.

135.   Acting under color of law, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen promulgated and carried out

the official policies, orders and directives described above to deter individuals from engaging in proper protected speech. They did so intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiffs, including the fundamental right to freedom of speech and freedom of association, arising out of the First Amendment of the United States Constitution.

136.   By promulgating and carrying out the policies, orders and directives described above, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen have unlawfully violated Plaintiffs' constitutional rights.

137.   As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earning capacity, loss of job and career opportunities, additional expenditures of time and money to remain employed, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

**COUNT IV**
**42 U.S.C. § 1983 – Due Process**

138.   Plaintiffs repeat and reallege all foregoing paragraphs as if they were set forth fully herein.

139. Plaintiffs enjoyed a constitutionally protected property interest in not being suspended without cause and without having tenure charges brought against them.

140. Plaintiffs enjoyed a constitutionally protected liberty interest in pursuing current and future employment and maintaining their reputations.

141. At all times material hereto, it was clearly established that violating theses rights and interests was constitutionally impermissible.

142. Acting under color of law, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen promulgated and carried out the official policies, orders, and directives described above intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of the Plaintiffs, including the fundamental right to due process arising out of the United States Constitution.

143. On January 21, 2016, Defendants, acting under color of law and pursuant to their respective authorities as described above, removed Plaintiffs from their classrooms during school hours and informed said Plaintiffs that they were on "paid administrative leave."

144. Prior to being suspended Plaintiffs were entitled to process commensurate with the seriousness of the allegations and the potential discipline,

sanctions, and repercussions they were facing. Here, the allegations were of the utmost seriousness, having career-ending ramifications.

145.   Plaintiffs were entitled to fundamentally fair procedures to determine whether misconduct occurred.

146.   At or around the time of Plaintiffs' suspension and planned termination, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen and/or other agents of Defendants publicly leveled claims and charges against Plaintiffs which stigmatized Plaintiffs and severely damaged Plaintiffs' opportunity for future employment.

147.   Said claims and charges were false.

148.   Said claims and charges were widely publicized.

149.   Said claims and charges were implicated in the dismissal process.

150.   Plaintiffs were not allowed to confront, much less cross-examine, their accusers, or to have a third-party do so.

151.   Plaintiffs were never provided with a list of witnesses.

152.   Plaintiffs were never provided with any witness statements.

153.   Plaintiffs were prohibited from contacting witnesses.

154.   Plaintiffs were denied a prompt, thorough and impartial investigation.

155.   Plaintiffs were denied meaningful name-clearing hearings prior to their suspension and planned termination.

156. Defendants' actions invaded Plaintiffs' constitutionally protected liberty and property interests in an arbitrary, capricious, and irrational manner.

157. Defendants acted with deliberate indifference to Plaintiffs' presumed and actual innocence.

158. Additional procedures would have proven that the misconduct at issue had not occurred.

159. At all times material hereto, Plaintiffs had a clearly established right to due process of law of which a reasonable public official would have known.

160. Nevertheless, Plaintiffs were disciplined, suspended, and sanctioned by Defendants, depriving them of their property and liberty interests, without being afforded basic due process, including but not limited to notice of the allegations against him and an opportunity to be heard.

161. Before depriving Plaintiffs of their constitutionally protected property and liberty interests, Defendants did not conduct any hearing, much less a meaningful one, providing them with the opportunity to respond, explain, and defend, or otherwise afford Plaintiffs notice of the grounds for their suspension and planned termination.

162. Defendants' actions in depriving Plaintiffs of their constitutionally protected property and liberty interests, without a hearing or other notice of the grounds for their suspension and planned termination and an opportunity to

respond, explain, and defend abridged their right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

163.  Defendants' actions invaded Plaintiffs' constitutionally protected property interests in an arbitrary, capricious, and irrational manner.

164.  By promulgating and carrying out the policies, orders, and directives described above, Defendants Van Tassel, Langford-Green, Mikulski, Toth, Kovach, English, Bennett, and Owen have unlawfully violated Plaintiffs' constitutional rights.

165.  As a direct and proximate result of Defendants' wrongdoing, Plaintiffs have sustained loss of earning capacity, loss of job and career opportunities, additional expenditures of time and money to remain employed, damage to their good names and reputations in the community, mental and emotional distress, humiliation and embarrassment, loss of the enjoyment of the ordinary pleasures of everyday life, and loss of the ability to pursue employment of choice.

## Relief Requested

Plaintiffs demand judgment against Defendants as follows:

A.  Legal Relief:

    1.  Compensatory damages in whatever amount they are found to be entitled;

    2.  Exemplary damages in whatever amount they are found to be entitled;

3.      Punitive damages in whatever amount they are found to be entitled; and,

4.      An award of interest, costs, reasonable attorney fees, and expert witness fees.

B.      Equitable Relief:

1.      Removal from Plaintiffs' files and records of any and all references to the allegations or investigation at issue, discipline or sanctions;

2.      Reinstatement to the Van Buren Public School District as tenured teachers in good standing;

3.      An injunction out of this Court prohibiting any further acts of wrongdoing or retaliation against Plaintiffs;

4.      An award of interest, costs and reasonable attorney fees; and,

5.      Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: May 20, 2016                   Respectfully submitted,
                                      **DEBORAH GORDON LAW**
                                      **/s/ Deborah L. Gordon (P27058)**
                                      **Benjamin I. Shipper (P77558)**
                                      Attorneys for Plaintiffs
                                      33 Bloomfield Hills Parkway, Suite 220
                                      Bloomfield Hills, Michigan 48304
                                      (248) 258-2500
                                      dgordon@deborahgordonlaw.com
                                      bshipper@deborahgordonlaw.com

## <u>JURY DEMAND</u>

Plaintiffs Pamela Bradley, Michelle Komaromi, Brent Held, and Rebecca Tennis, by and through their attorneys, Deborah Gordon Law, demand a trial by jury of all the issues in this cause.

Dated: May 20, 2016     Respectfully submitted,
            **DEBORAH GORDON LAW**
            **/s/ <u>Deborah L. Gordon (P27058)</u>**
            **Benjamin I. Shipper (P77558)**
            Attorneys for Plaintiffs
            33 Bloomfield Hills Parkway, Suite 220
            Bloomfield Hills, Michigan 48304
            (248) 258-2500
            dgordon@deborahgordonlaw.com
            bshipper@deborahgordonlaw.com